(Decided December 18th, 1894.)

## CARROLL S. MACGILL AND OTHERS *vs.* HARRIET R. HYATT, TRUSTEE.

*Creditors' Bill—Estates of Decedents—Mortgage Creditor—Jurisdiction of the Orphans' Court.*

A creditors' bill to subject the real estate of a decedent to the payment of a mortgage debt must allege that the personal estate of the decedent is insufficient for the payment of his debts.

Where a creditors' bill is filed for the sale of a deceased debtor's real and personal estate, the general rule is that the personal representatives of such debtor must be made parties.

A creditor of a decedent is not entitled to maintain a bill in equity to administer the deceased's estate, because the whole of it, both real and personal, belongs to his children, when there is no allegation of the insufficiency of the personal estate, and in the absence of any attempt to invoke the aid of the Orphans' Court.

The estates of deceased persons should ordinarily be administered and finally distributed in the Orphans' Courts.

Plaintiff, the mortgagee of a deceased debtor, the mortgage being overdue, was in possession of the property. The executor of the mortgagor died without having made any return to the Orphans' Court, and no administrator *c. t. a.* was appointed. Plaintiff, without foreclosing the mortgage or taking any steps in the Orphans' Court, filed a general creditors' bill against the sureties of the deceased executor and the children of the deceased mortgagor praying for an account of the whole estate and the application of the same to the payment of all debts. *Held*, upon demurrer, that the bill should be dismissed.

In such case the plaintiff should have proceeded in the Orphans' Court to have an administrator *d. b. n. c. t. a.* appointed, who could have obtained and distributed the estate of the deceased mortgagor without the aid of a Court of Equity, or, if the personal estate proved insufficient, the plaintiff should have sold the mortgaged property and claimed from the general estate only for the deficiency.

A mortgage creditor, after having exhausted his security by a sale, may come in *pari passu* with other creditors, but he should not be allowed to hold on to the mortgage security and at the same time demand payment of the mortgage debt out of the fund which should be appropriated to the claims of the unsecured creditors.

Appeal from an order of the Circuit Court for Baltimore County (BURKE, J.), overruling the defendant's exceptions and demurrer to the bill of complaint. The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., McSHERRY, FOWLER, PAGE, ROBERTS and BOYD, JJ.

*Talbot J. Albert,* for the appellants, cited: 1 *Story Eq. Pldg.* secs. 101, 270; *Taylor* v. *Bruscup,* 27 Md. 225; *Worthington* v. *Herron,* 39 Md. 145; *Abbott* v. *Golibert,* 39 Md. 555; *Dalrymple* v. *Gamble,* 66 Md. 307; *Wilson* v. *Wilson,* 23 Md. 162; *Barney* v. *Morgan,* 1 Sim. & Stu. 358; *Jones* v. *Garcia, etc.,* 1 Turn. & Russ. 297; *White* v. *Hillard,* 3 Young & C. 597.

*Frederick W. Story,* for the appellee, cited: *Lingan* v. *Henderson,* 1 Bland, 282; *Andrews* v. *Scotton,* 2 Bland, 665;

*Wilhelm* v. *Lee*, 2 Md. Ch. 322 ; *Brown* v. *Stewart*, 1 Md.
Ch. 87 ; 4 *Kent Com.* 183 ; *Tessier* v. *Wyse*, 3 Bland, 57 ;
*Hammond* v. *Hammond*, 2 Bland, 347 ; *Wilson* v. *Wilson*,
23 Md. 169.

FOWLER, J., delivered the opinion of the Conrt.

The appellee, Harriet R. Hyatt, trustee, is a mortgage
creditor to the amount of two thousand dollars of the late
Mary C. Macgill, who died in 1888, leaving a will duly ex-
ecuted and proved, the contents and purport of which do
not appear in this record—except that it is alleged in the bill
of complaint that her husband, the late Oliver P. Macgill,
was thereby duly appointed executor. Nor does it appear
whether the large and valuable real and personal estate of
which it is alleged she died possessed was bequeathed and
devised to her children or to others. The executor ac-
cepted the trust imposed upon him by the will and gave
bond in the sum of six thousand dollars, but made no re-
turns to the Orphans' Court of Baltimore County, from
which his letters testamentary had been issued.

The mortgage debt was overdue and in arrear during the
lifetime of Mrs. Macgill, and so continued after her death
and during the life of her executor, the interest having been
duly paid to the 13th day of August, 1891. It does not
appear that any demand for the payment of this indebted-
ness was made either upon the deceased or her executor.
From first to last, no proceedings whatever appear to have
been taken in the Orphans' Court by the appellee to have
her account passed against the estate of her debtor, nor has
she ever taken any steps to compel the executor to account
for and distribute the estate, nor after his death to have ap-
pointed in his place an administrator *d. b. n.* For nearly a
year before the institution of this suit, the mortgaged premi-
ses were in the possession of the appellee as mortgagee,
and during that time she has collected the rent and appro-
priated it to the payment of prior incumbrances.

Under these circumstances the appellee has filed a gen-

eral creditors' bill against the sureties of the deceased executor and the children of the deceased debtor, praying that the defendants may be required to discover and account for the whole real and personal property of the deceased, and especially that the two defendants who are sureties of said executor may account for all the estate which came or ought to have come into the hands of their principal; that the personal estate, as yet unadministered, may be applied, so far as it will go, to the payment of all debts, and that, after the exhaustion of personal assets, the real estate may be sold for the payment of any unpaid balance of debts.

To this bill the defendants demurred upon several grounds, some of which we will proceed to consider.

1. The first is that the matters complained of are peculiarly within the jurisdiction of the Orphans' Court. There can be no doubt that under the system prevailing in this State, the estates of deceased persons should ordinarily be administered and finally distributed in that Court. In *Hewitt's case,* 3 Bland, 184, it was said that " The power to make a distribution  *   *  of the personal estate remaining in hands of the administrator has been conferred upon the Orphans' Court, with which this Court should not interfere, except on account of some special circumstances to which the powers of the Orphans' Court may not be altogether adequate." And in *Alexander* v. *Leaken,* 72 Md. 199, in which the case just cited is referred to, we said, citing section 230 of Code, Art. 93, these Courts "have full power to take probate of wills, grant letters testamentary and administration, direct the conduct and settling of accounts of executors and administrators, superintend the distribution of the estates of intestates  *   *   *  and to administer justice in all matters relative to the affairs of deceased persons."

The last clause of the section just quoted is very broad, and shows the legislative intention was to confer adequate power and jurisdiction upon Orphans' Courts in every case in which their general powers would enable them to act.

It is true that in a number of cases we have said that personal representatives and others interested in the settlement of estates of deceased persons may seek the aid of a Court of Equity, as in *Woods* v. *Fuller*, 61 Md. 459, where it was held that a trust having been imposed upon the executor, he may, if in doubt, have the direction of a Court of Equity as to how he shall discharge it; distributees may file a bill in equity against an administrator for their share of the intestate's estate, and a legatee may adopt the same proceeding to recover a legacy. *Conway* v. *Green*, 1 H. & J. 151; *Woods* v. *Fuller, supra.* And in *Alexander* v. *Leakin et al.*, just cited, the application to a Court of Equity on the part of certain non-residents as next of kin was maintained on the ground that the powers of the Orphans' Court were not altogether adequate to afford complete protection and relief.

The bill, in this case, however, does not, we think, make a case beyond the general and ordinary powers of the Orphans' Court. The debtor having, as is alleged, a real and personal estate of great value, departed this life leaving a will duly executed and proved. The executor named in the will, after duly qualifying, died without having fully or at all administered the estate. One of the children of the deceased debtor is charged with having concealed and counseled others to conceal information concerning the estate. Our Code, section 70, Art. 93, provides for the appointment of a successor of the deceased executor, and sections 238 and 239 of the same article, give to Orphans' Courts full power to proceed against any administrator or other person charged with concealment. We think that the appellee should have proceeded in the Orphans' Court of Baltimore County to have an administrator *d. b. n. c. t. a.* appointed, who could, so far as we can now ascertain, have obtained the personal estate, and could have distributed it without the aid of a Court of Equity.

2. But assuming for the present that the appellee can in any aspect of the case file a creditor's bill to subject real

estate to the payment of his mortgage debt, is the bill filed in this case a good one? The allegation necessary to give equity jurisdiction is wanting. There is no sufficient allegation anywhere in the bill that the personal estate left by the deceased debtor was insufficient to pay her debts. It is alleged in the 9th paragraph, " that the personal estate * * or at least such portion thereof which now remains, is not sufficient," &c., &c. But this is far from what is required. *Non constat* that sufficient personal property did not come into the hands of the executor to pay all debts ; and if so, the remedy of the creditor would be on the executor's bond. *Wyse et al.* v. *Smith & Buchanan*, 4 Gill & J. 302. Before the real estate of the deceased debtor can be appropriated to the payment of debts, the deficiency of the personal estate *left* by the decedent must be alleged and proved. Without such allegation a Court of Equity has no jurisdiction. *Lyde Griffith* v. *The Frederick County Bank*, 6 Gill & Johnson, 445, &c.

3. Not only is the bill thus defective, but the appellee, being a mortgage creditor, has never attempted to avail herself of her special lien by exercising her power of sale, although she has had ample opportunity to do so. She could, therefore, have easily ascertained whether the proceeds would suffice to pay her claim, or, if not, what the deficiency would be. There may have been no deficiency, for the sale may have produced more than enough to pay her debt. It does not seem just to other creditors (and the theory of the bill is that there are others), that the mortgagee should be allowed to hold on to her mortgage security, and at the same time demand payment of the mortgage debt out of the fund which should be appropriated to the satisfaction of the claims of the unsecured creditors.

In this case the mortgagee does not appear to have offered to surrender her security, or to sell the mortgaged estate for the purpose of paying her claim in whole or in part. This latter, we think, under the circumstances of

this case, would have been the equitable course for her to pursue, and one which is generally recognized and approved by Courts of Equity. Thus in *Hammond* v. *Hammond* (*supra*), the chancellor says that while liens must be respected, they will not be allowed to be used to the injury of unsecured creditors if they can be enforced without such injury ; and, therefore, " a mortgage creditor, *after* having exhausted the mortgaged estate *by a sale*, may come in *pari passu* with other creditors." And in *Amony* v. *Francis, Admr.*, 16 Mass. 311, PARKER, C. J., announces the rule to be that every creditor having a mortgage or other security shall *before he is admitted* to prove his debt, surrender his security for the benefit of the other creditors, the proceeds going to the common fund, or shall suffer the pledge to be sold, taking the proceeds towards his debt and proving for the residue. And in conclusion he says, as we say here : " If the creditor had taken possession of the mortgaged premises and and foreclosed the mortgage, he would have a right to prove for the balance." See also to the same effect *Farnum* v. *Boutelle*, 13 Metc. 159 ; *Trustee, &c.* v. *Cronin*, 4 Allen 141. And in 1 *Story's Equity Jurisp.* sec. 633, the learned author lays down the rule in substantially the same terms as those used by the Chancellor in *Hammond* v. *Hammond, supra,*

4. There is another ground on which the demurrer was based, namely, the failure to make the personal representative of the deceased debtor a party to this proceeding. This, we think, is also a valid objection, for in our opinion, upon the facts alleged, the personal representative is a necessary party.

It is conceded this is generally so where, as here, a creditor's bill is filed for the sale of a deceased debtor's real and personal estate. *Tyler* v. *Bowie*, 4 H. & J. 333 ; *David* v. *Grahame*, 2 H. & G. 94; *The Mayor* v. *Chase*, 2 G. & J. 376 ; *Birely* v. *Staley*, 5 G. & J. 432, and *Hammond* v. *Hammond, supra.* But it is contended that under the circum-

stances of this case the rule may be disregarded, because it is not applicable. To sustain this position, *Hammond* v. *Hammond, supra,* and *Tessier* v. *Wyse,* 3 Bland, 57, were cited, but we do not think they help the appellee's case. It is said in *Hammond's case,* that a creditor's bill may be sustained against heirs and devisees of a deceased debtor alone without joining the personal representative, if it plainly appears in the case that the debtor left no personal property whatever, or so little that no one had taken out letters of administration. It is sufficient to say that the bill here alleges the deceased left "personal estate of great value." The other contingency, as stated by the chancellor in *Hammond's* case, which will justify the omission of the personal representative as a party, is the death or insolvency of such representative. But it seems to us clear that he is not to be understood as saying, that the allegation of either of these or both together would alone give jurisdiction in the absence of any proper allegation of the insufficiency of the personal estate. For such a construction of the chancellor's language would put him in conflict with the settled rule that to give jurisdiction such insufficiency must be clearly alleged.

The case of *Tessier* v. *Wyse, supra,* is based upon a state of facts very different from that presented by the bill in this case. There it was held that the children of William Wyse being entitled to the real estate as heirs at law, and to the personal estate as his next of kin, they had both funds in them, and that so circumstanced, it was immaterial *as to them,* out of which fund the debt was paid, and therefore it was held that the administrator was not a necessary party. Here the deceased left a will, but whether her personal and real estate are in the hands of the defendants, we do not know, for, as we have said, her will is not to be found in this record. But we are not willing to sanction the rule of practice which is sought to be established by the case of *Tessier* v. *Wyse,* namely, that without regard to the insufficiency of the personal property, and in the absence of any attempt to

invoke the aid of the Orphans' Court, a creditor's bill may be filed in equity to administer a decedent's estate, because the whole of the estate, real and personal, happens to belong to his children. Such a rule would not only deprive the Orphans' Court of a large part of its jurisdiction and vest it in a Court of Equity, but would be in conflict with the settled rule we have just referred to.

There were other grounds on which the demurrer was based, but we need not consider them. What we have said disposes of the case. It follows that the demurrer must be sustained and the bill dismissed, without prejudice, however, to the right of the appellee to take such further proceedings as she may be advised may be necessary.

*Bill dismissed without prejudice. Order reversed with costs to appellants.*