# WILLIAM D. McLAUGHLIN

*vs.*

# LAWRENCE J. McGEE, ET AL.

*Decedent's estate: deficiency of assets; creditors' rights; in*
*equity and orphans' courts; parties; mortgage foreclosures;*
*distribution of surplus.  Legacies: lapsing—; effect*
*of section 326, Article 93 of Code.  Proceed-*
*ings in equity: filing copies of written*
*instruments relied on; not neces-*
*sary where clearly nugatory.*

Section 293 of Article 93 of the Code, giving to the Orphans'
Court concurrent jurisdiction with courts in equity regarding
the real estate of decedents up to $2,500, applies only to cases
of intestacy, and does not confer general equity powers on them
beyond what is necessary for the sales specifically authorized.

p. 160

Where the creditor of a deceased mortgagor proceeded against
the surplus of a mortgage sale in the hands of the trustee, the
mere fact that part of the property mortgaged consisted of
leasehold property does not affect the jurisdiction of the Cir-
cuit Court over the funds in the hands of the trustee.     p. 160

The Circuit Court which had jurisdiction over proceedings
to foreclose a mortgage must not only make distribution as to
the mortgage debt and expenses, but must see that a proper
distribution is made of the excess.                       p. 161

Where a creditor of the deceased mortgagor's estate proceeds
against such funds in the trustee's hands, with the proper allega-
tions and proof, there is no reason to send him to the Orphans'
Court, especially if there be no funds there.            p. 161

Creditors of decedents have the right to have their claim passed in the Orphans' Court, but they are not debarred thereby from proceedings in equity by way of a creditor's bill, in case of insufficiency of assets.                    p. 161

The proceedings need not be by original bill, but may be by petition.                    p. 162

Where courts have concurrent jurisdiction, the one first taking jurisdiction retains it.                    p. 162

A creditor of a mortgagor has the right to proceed against the surplus remaining in the hands of the trustee who made the sale, if the proper parties are before the court and the proper allegations be sustained by proof.                    p. 162

In proceedings in equity to sell the real estate of a decedent on account of deficiency of personal assets to pay the decedent's debts, the correct practice is to make his personal representative a party, unless it clearly appears that there was no personalty, or so little as not to justify taking out letters, or unless there was some other reason for not requiring it.                    p. 164

Upon foreclosing a mortgage of real estate, the surplus remaining (after payment of the mortgage debt, interest, costs and commission) is treated as real estate.                    p. 164

Where an executor is in court in his individual capacity and also as trustee, his failure to appear as executor, even if he has not been formally summoned as such, can not delay or affect the proceedings.                    p. 165

Where, in proceedings in equity, objection was made because of the non-filing of a copy of a will, referred to as giving an interest to certain persons such as to make them necessary parties, it was: *Held,* that the objection could not prevail where the will was that of a legatee who had died before his testator, and who, in turn, had attempted to dispose of the legacy left him by the will, for want of a copy of which the objection was made.                    pp. 165-167

Chapter 34 of the Acts of 1810 (section 326 of Article 93 of the Code) did not enlarge the powers of devising; and a legatee who dies before the testator can not bequeath what he would have received had he survived the testator.          pp. 165-166

By that statute, a legacy so saved from lapsing is not liable for the legatee's debts, nor does it pass through the administration of the deceased legatee's estate, but goes directly to his next of kin, subject to dower rights, etc.                    p. 166

*Decided June 27th, 1917.*

Appeal from the Circuit Court of Baltimore City. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*J. Morfit Mullen* (with whom was *John P. Horsey* on the brief), for the appellant.

*J. Royall Tippett* (with whom was *Wm. Colton* on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from three decrees of the lower Court sustaining demurrers to and dismissing the petition of William D. McLaughlin, seeking to have an indebtedness due by Bridget McGee to him paid out of a surplus remaining in the hands of a trustee who, under a decree appointing him to sell certain real and leasehold properties which were included in a mortgage given by Bridget McGee to Lawrence J. McGee, trustee, sold them, and the sales were duly ratified. The decree of sale was passed under the Public Local Laws of Baltimore City and J. Royall Tippett was appointed trustee to make the sales. He reported sales of two leasehold properties included in the mortgage, amounting to $775.00, and of four properties in fee simple, the proceeds of which amounted to $5,850.00—the total being $6,625.00. The sales were excepted to by Mary E. O'Hare,

a daughter of Bridget McGee, who had died in 1913, but the exceptions were dismissed and the sales ratified on October 20th, 1916.

The petition of the appellant alleges that he loaned Bridget McGee $4,000.00 upon a mortgage, and on foreclosure of it there was a deficit of $1,408.77. Lawrence J. McGee, executor of Bridget McGee, was duly summoned, and on March 29th, 1915, a decree *in personam* was entered against said executor for said sum, as authorized by section 731-A of Article 4 of Public Local Laws. The appellant filed his claim in the Orphans' Court of Baltimore City, where it was duly passed, but he alleges in his petition that Bridget McGee had no estate, real or personal, at the time of her death, other than that included in the two mortgages, and that she did not have personal estate sufficient to pay her debts and the costs of administration.

She made a will by which she left $700.00 to her daughter, Mary Ellen O'Hare, and the residue of her estate to her two sons, Rev. Joseph Francis McGee and Lawrence John McGee. The latter she also appointed her executor. The will was admitted to probate on the 15th of April, 1915, and letters testamentary were issued to Lawrence J. McGee the same day. Mary E. O'Hare filed a caveat to the will on the 17th of April, 1915, and Lawrence J. McGee, executor, filed an answer to it on April 30th, and since that time nothing has been done in relation to the caveat.

Demurrers were filed to the petition of the appellant by Lawrence J. McGee, individually, and as trustee, by J. Royall Tippett, trustee, and by Mary Ellen O'Hare, on the ground (1) that the petition did not state a cause of action which gave the Court jurisdiction; (2) because of the lack of necessary parties; (3) because the Court was without jurisdiction in the premises; (4) because the jurisdiction of the matters and things alleged in the petition is exclusively within that of the Orphans' Court, and not within the Circuit Court of Baltimore City, and (5) for other reasons

to be made known at the hearing.  No opinion was filed, and hence we are not informed as to the reasons for the action of the lower Court.

In the brief of the appellees it is contended that as two of the properties were leasehold the jurisdiction of the Orphans' Court over them was exclusive, and as the other properties described in the mortgage and reported sold, after the payment of the mortgage debt and expenses, would leave in the hands of the trustee less than $2,500, the Orphans' Court, under Article 93, section 293 of the Code, had concurrent jurisdiction with Courts of Equity and its jurisdiction should not be disturbed.  But the language of that statute does not justify the contention made.  In the first place, it only applies to the real estate of *intestates,* and hence is not applicable to this case, but beyond that the object of the statute is manifest.  It was intended to give the Orphans' Court jurisdiction of the real estate of intestates to the amount of $2,500, but not to confer generally equity powers on them beyond what was necessary for the sales specifically authorized.  In order to give Orphans' Courts jurisdiction in the cases referred to in that section, the real estate must be appraised, and in section 295 provision is made for the appointment of the appraisers.  The statute does not give them jurisdiction in a proceeding such as this, and the fact that the surplus is less than $2,500.00 can make no possible difference.

The mere fact that $775.00 of the proceeds of sales were from leasehold properties could not affect the jurisdiction of the Circuit Court, which already had jurisdiction over the fund in the hands of the trustee.  The petition alleges that there is not enough personal property to pay the debts and costs of administration—indeed, it alleges that Mrs. McGee had no estate, real or personal, other than the property covered by the two mortgages.  If the whole of the $775.00 was applied, it would not be much more than half of the petitioner's claim.  There could be no valid reason for subjecting

the fund, or such part of it as might be held to be personalty, to the commissions of the executor and other expenses of administration, and there is no statute or decision in this State which require that to be done in a case of this kind. The Circuit Court had jurisdiction over the proceeding to foreclose the mortgage, and it must not only make distribution to the mortgage debt and expenses, but it must see that the excess is properly disposed of. If, then, a creditor goes into that Court, and makes such allegations as are necessary to sustain a creditor's bill, and sustains them by the necessary proof, there could be no reason for sending him to the Orphans' Court, *especially if there are no funds there.*

There is no ground for contending, as the appellees do, that because the appellant filed a copy of his decree against the executor of the estate of Bridget McGee in the Orphans' Court, he is estopped from thereafter going into a Court of equity. It may be well to say in passing that, although absolute judgments at law obtained by a creditor of a deceased person against his executor or administrator generally amount to an admission of assets, and could not, prior to Ch. 14 of Acts of 1916, be resisted by him, on the ground of a deficiency of assets, yet as between the creditors and the heirs at law, in a proceeding to subject the real estate to the payment of his debt, such a judgment was not conclusive, and a creditor must show a deficiency of assets. *Gaither* v. *Welch,* 3 G. & J. 259; *Boteler* v. *Beall,* 7 G. & J. 389, 397. Creditors of deceased persons have the right to have their claims passed in the Orphans' Court, but that does not prevent them from proceeding in a Court of equity, by way of a creditor's bill, in case of an insufficiency of assets. Section 218 of Article 16 in terms provides that if a person leaves real estate but does not leave personal estate sufficient to pay his debts and costs of administration a Court of equity may decree a sale of so much thereof as may be necessary to pay his debts. Moreover, section 219 of that Article expressly provides that the certificate of the register of wills to the proof of

such claims or distribution thereto in the Orphans' Court shall be *prima facie* evidence of the claims, and sufficient to entitle them to distribution out of the proceeds of the real estate of the deceased debtor, unless excepted to by some person interested in the estate. There is, therefore, not only no estoppel, but the statute expressly provides for filing the certificate of register of wills, which is made *prima facie* evidence.

The case of *Macgill* v. *Hyatt*, 80 Md. 253, relied on by the appellees, was a wholly different case. There the bill alleged that the debtor had real and personal estate of great value, and it did not allege that the personal estate was insufficient to pay the debts. It was said by the Court that it was not shown that sufficient personal property to pay all the debts had not come into the hands of the executor, and, if it had, the remedy of the creditor was against the executor's bond. Nor does the case of *Wright* v. *Williams*, 93 Md. 66 also relied on by the appellees, in any way prevent the appellant from coming into a Court of equity. Of course, when two Courts have concurrent jurisdiction, the one first taking jurisdiction retains it, but there are no such conditions here.

We did not suppose until we heard this case that the right of a creditor to proceed against a surplus in the hands of a trustee, in a mortgage foreclosure proceeding, would now be questioned in this State, if the necessary allegations are made, and the necessary parties are before the Court. The question is so thoroughly settled that we will only refer to some of the authorities, without deeming it necessary to quote from them. *Miller's Equity Proc.*, 458, sec. 377; *Fenwick* v. *Laughlin*, 1 Bland. 474; *Gaither, et al.*, v. *Welch*, 3 G. & J. 259, 263; *Griffith* v. *Parks*, 32 Md. 1, and many other cases might be cited. In *Griffith* v. *Parks*, JUDGE ALVEY, on page 5 of 32 Md., in showing that it was not necessary to proceed by original bill, but that a petition was sufficient in the case before him, relied on the practice in cases of this

kind, as established by *Fenwick* v. *Laughlin* and *Gaither* v. *Welch.*

It is also objected that there is a lack of necessary parties —the appellees claiming that the executor of Mrs. McGee was not made a party. The petition expressly prayed for a writ of subpœna against him, and that the parties to the case be required to show cause why the relief sought should not be granted. There seems to be some confusion as to whether the personal representative should be made a party in such a proceeding as this, but in *David* v. *Grahame,* 2 H. & G. 94; *Tyler* v. *Bowie,* 4 H. & J. 333, and *Baltimore* v. *Chase,* 2 G. & J., on page 381, our predecessors held that in a proceeding for the sale of real estate of a person dying without leaving personal property sufficient to pay his debts, it was necessary to make the executor or administrator a party. There were original bills in those cases to sell the real estate, under what is now section 218 of Article 16 of the Code, but the reasoning of CHIEF JUDGE BUCHANAN in *David* v. *Grahame,* would apply with equal force to a proceeding by petition of this kind. In *Macgill* v. *Hyatt,* on page 259 of 80 Md., where one ground of the decision was that the failure to make the personal representative a party to the bill made it demurrable, it was said, that "It is conceded this is generally so where, as here, a creditor's bill is filed for the sale of a deceased debtor's real and personal estate," and JUDGE FOWLER distinguished *Hammond* v. *Hammond,* 2 Bland. 347, saying that in that case it appeared that the debtor left no personal property whatever or so little that no one had taken out letters of administration, and the Court declined to sanction the rule of practice sought to be established by *Tessier* v. *Wyse,* 3 Bland. 57. It was held in *Macgill* v. *Hyatt* that the personal representative was a proper party, but, as we have seen, personalty as well as real estate was involved there.

In *Jones* v. *Jones,* 1 Bland. 443, cited by the appellees, the fund was in the sheriff's hands arising from an execution sale of real estate, but it was held to have been converted **into**

personalty, and hence the administrator was a necessary party, which differs from a sale of real estate under a mortgage, as decided in *Fenwick* v. *Laughlin,* where the surplus was held to be real estate, and that case has since been followed. In this case where some leasehold and some real estate were sold, there were both personalty and realty in the surplus, and hence it would seem to come within *Macgill* v. *Hyalt.* But independent of that, we think the correct practice requires the personal representative to be made a party, unless it clearly appears that there was no personalty, or there was so little as not to justify taking out letters of administration, or there was some such valid reason for not requiring it.

Applying the rule then to this case, what is the result? Lawrence J. McGee is the executor of the will, and the demurrer filed by him begins, "Lawrence J. McGee, individually, and Lawrence J. McGee, trustee, demurs to the amended petition," etc. It is signed, "J. Royall Tippett, Attorney for Lawrence J. McGee, individually, and Lawrence J. McGee, executor." While it is irregularly drawn, it may well be presumed that the demurrer was intended to have been filed by him *as executor,* as his attorney so signed it, and as trustee he has no interest in the surplus. The only possible interest he could have in that capacity would be to see that his mortgage was allowed in full, but his right to have that done was not questioned, and the petition only seeks to affect the surplus after the mortgage is paid.

As the question of the correct practice was raised, we have perhaps gone more at length into that than the exigencies of this case demanded. We are simply passing on demurrers, and, as we have seen, the petition expressly asks for a subpœna against Lawrence J. McGee, *as executor.* How, then, can the demurrer reach the question? There is nothing in the petition to show that Lawrence J. McGee, executor, was not made a party—on the contrary it shows that he was. If he was not summoned as such, or did not voluntarily appear,

if objection to the petitioner proceeding further until the executor is regularly brought into Court is desired to be made, it would have to be done in some way other than by demurrer to the petition, as that does not disclose any defect in that respect. But to avoid any misapprehension of our position on the subject, we will add that as this executor is undoubtedly in Court in his individual capacity and also as *trustee,* his failure to appear as *executor,* even if he has not been formally summoned as such, cannot delay or affect the proceedings. If there is anything for the executor to do, especially as to whether the personal estate is sufficient to pay the debts of the deceased, it is his duty to appear if he has not already done so, as he has knowledge of the proceedings. He, J. Royall Tippett, trustee, and Mary Ellen O'Hare, have all appeared and demurred, and they have made themselves parties, even if there was any defect in the prayer of the petition or the proceedings seeking to have them brought before the Court.

It is also objected that the personal representative of Rev. Jos. Francis McGee was not made a party, but if the petition correctly states the facts, as we must assume that it does, in considering the demurrers, he died before his mother. If his mother's will should be set aside, in the caveat proceeding, then he did not inherit anything, and if the will is sustained, the devise and bequest to him do not lapse, but under section 326 of Article 93, they "shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest, as if such devisee or legatee had survived the testator."

In the leading case of *Glenn* v. *Belt,* 7 G. & J. 362, that provision was construed, and questions were settled then that have since been recognized as the established law of this State. It was distinctly held that the power of devising was not enlarged or affected by that statute—that a legatee who died before the testator could not bequeath what he would

have received under the testator's will if he had survived him. The reason for that is that a testator can not devise or bequeath what he has no interest in at the time of his death, when his will takes effect. JUDGE ARCHER began his opinion in that case by saying, "Madam Volunbrun's will could only operate to pass that which by law was the subject of a devise or bequest. The expectancy of a benefit to be derived from the will of Cleary was but a naked possibility, and could not, under any authority cited, be the subject of a testament. Indeed, it has been conceded, that such is the law, unless some alteration has been effected in it, by the Act of 1810, Ch. 34." That Act is the original one upon which section 326 is founded. Madam Volunbrun was a legatee under Mr. Clery's will, and she died before he did. The Court in effect said that she had nothing to will when she died as coming through Cleary's will.

The next question then was who took the legacy which was saved from lapsing by the Act. It was held that it went directly to those who would have been entitled to it, if the legatee had survived the testator—that it did not pass as assets to the executor or administrator of the deceased legatee, but the transfer was to persons *in esse,* entitled to the distribution of the legatee's estate. It is not liable for the legatee's debts, and goes directly to the next of kin, and not through the medium of an executor or administrator of a deceased legatee, if personalty, and if it is real estate, it goes directly to the heirs of the devisee, subject to the dower of a husband or wife, as decided in *Vogel* v. *Turnt,* 110 Md. 192. See also *Wallace* v. *DuBois,* 65 Md. 153; *Halsey* v. *Convention of Prot. Epis., Ch.,* 75 Md. 275; *Garrison* v. *Hill,* 81 Md. 206.

So, although the petition refers to the will of Rev. Jos. F. McGee, as he died before his mother, he could not have devised or bequeathed any property left in her will to him, but it went to his heirs or next of kin, as the case may be. If his will had taken effect on the property sold under the

mortgage, which sales produced the surplus in controversy, then the proceeding would have been defective for not filing a copy of his will, but as he received nothing under the will of his mother which he could will, it was not necessary to file his will, and as his administrator *c. t. a.* does not take any of this fund and has no interest in any of the properties, as far as appears in the Record, there is no necessity for making his administrator *c. t. a.* a party. There is nothing to show that anyone but Mrs. O'Hare and Lawrence J. McGee have any interest in what would have gone to the Rev. Jos. F. McGee if he had survived his mother, and as they are parties, are actually in Court demurring to the petition, there is nothing in the petition to show a lack of necessary parties. If any other person has an interest, that can be shown in the answer, but the petition does not disclose such interest, and hence it is not demurrable on that account.

The demurrers should have been overruled, and the parties required to answer. It follows that the decrees sustaining the demurrers and dismissing the petition must be reversed.

> *Decrees reversed, and case remanded for further proceedings, the costs in this Court to be paid by the appellees, and those below to abide the final result.*